JORDAN, Circuit Judge,
concurring.
I agree that, under the abuse of discretion standard, the district court did not commit reversible error in its handling of the reported incident in the parking lot. See United States v. Duperval, 777 F.3d 1324, 1338 (11th Cir.2015) (Jordan, J., concurring). But my rationale differs somewhat from that of the majority, and as to this issue, I concur only in the judgment.
In my mind, there was no abuse of discretion because the defense jumped the gun and sought an immediate mistrial without first requesting that the district court interview the juror in question. See generally United States v. Herring, 568 F.2d 1099, 1104-05 (5th Cir.1978). Nevertheless, from my perspective, questioning *1261 the juror would have been a wise thing to do.
To recap, after the lunch recess on the first day of trial, the district court told the parties in chambers that one of the jurors had reported — apparently to someone on the court’s staff — that “several of the supporters of the defendant in this ease were standing behind [that] juror’s car and would not move and let her get out. Ultimately they did move and she got out. I understand she was upset about it and all the other jurors now know about it.” Trial Tr. [D.E. 201] at 68. From what we can tell, the district court never spoke to the juror in question, and learned of the incident only because the juror told someone on the court’s staff, who then relayed the information to the court.
The majority says that there was no showing that anyone communicated with the juror “about a matter pending before the jury,” and that is true. But that is too narrow a perspective. The incident, as reported, suggested that at least one of the jurors felt (rightly or wrongly) that she had been the target of an attempt by the defendant or his supporters to intimidate her, and was understandably upset as a result. And given what the district court was told, it appears that all of the other jurors had since learned of the incident. Because a threat against a juror is an improper outside influence, see United States v. Jones, 132 F.3d 232, 245 (5th Cir.1998), regardless of whether the threat is communicated verbally or through conduct, interviewing the juror who reported the incident would have been a good way for the district court to assess the potential harm and calibrate the appropriate judicial response.
There was no interview, so a number of critical questions remained unanswered. Was the incident accurately reported to the district court, or did the account get lost in translation on the way from the jury room to chambers? Why did the juror believe that her car had been blocked by “supporters of the defendant,” as opposed to anyone else? Did the juror exchange any words with those who blocked her ear? Exactly what did the juror tell the other members of the jury about the incident? Did the members of the jury discuss the incident amongst themselves? If so, did any of the jurors form any opinions about the defendant or the case against him? Had it known the answers to these questions, the district court would have been in a better position to determine the appropriate response.